**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**COREY HOLMES,**

        **Petitioner,**

**v.**

        **Criminal No. 2:16cr94**
        **Civil No. 2:18cv200**

**UNITED STATES OF AMERICA,**

        **Respondent.**

## OPINION and ORDER

This matter is before the Court on Corey Holmes's ("Petitioner") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 140. Petitioner's § 2255 Motion contains multiple claims alleging ineffective assistance of counsel. For the reasons set forth below, Petitioner's § 2255 motion is **DENIED**.

### I. FACTUAL AND PROCEDUARL HISTORY

On July 6, 2016, Petitioner was charged with four counts of an Indictment: Conspiracy to Interfere with Commerce by Means of Robbery in violation of 18 U.S.C. § 1951(a)(Count One); Interference with Commerce by Means of Robbery in violation of 18 U.S.C. §§ 1951(a) and 2 (Counts Three and Six); and Use of a Firearm During a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count Seven). Ind., ECF No. 11. On July 29, 2016, Stephanie Johnson was appointed as Petitioner's

attorney. Pursuant to a written plea agreement, Petitioner pled guilty before Magistrate Judge Miller to Count One of the Indictment on October 7, 2016. Plea Agreement Hr'g, ECF No. 63; Plea Agreement, ECF No. 64. Magistrate Judge Miller accepted the plea, and the matter was continued for sentencing. Order Accepting Plea of Guilty, ECF No. 66; Sen. Procedures Order, ECF No. 67.

In the presentence investigation report ("PSR") prepared on December 8, 2016, the probation office calculated Petitioner's advisory guidelines range to be 108 to 135 months imprisonment based upon an offense level of 29 and a criminal history category of III. PSR ¶ 86-87, ECF No. 94. On January 17, 2017, the Government filed a position paper indicating no objections to the PSR and requesting a sentence at the "highest end" of the guideline range. Gov't's Pos. Paper, ECF No. 104. On January 19, 2017, Petitioner filed a position paper indicating no objections to the PSR but requesting a downward departure from the guidelines, based on an overrepresented criminal history, or, alternatively, a downward variance. Def.'s Pos. Paper, ECF No. 105.

At Petitioner's sentencing hearing on January 23, 2017, Petitioner's Counsel made an oral motion to continue sentencing because (1) she had not received all of the video evidence that the Government wished to present at the sentencing hearing, (2) the Petitioner may have made a statement to a victim that Counsel wanted to check, and (3) there were disagreements about the

appropriateness of forfeiture. Min. Entry, ECF No. 109; March
Sen. Hr'g Tr. 4-5, ECF No. 142 (summarizing the January 23
sentencing hearing). The Court granted the continuance, and the
sentencing hearing was continued until March 31, 2017. Min. Entry,
ECF No. 109.

On February 13, 2017, the Government filed a motion for
preliminary order of forfeiture. Forfeiture Mot., ECF No. 120.
After (1) reviewing the motion and supporting law and (2) waiting
for, but not receiving, a response or objection to the order, the
Court signed the order of forfeiture on March 3, 2017. Forfeiture
Order, ECF No. 121. On March 29, 2017, Petitioner's Counsel filed
a motion to withdraw, stating that Petitioner wished to represent
himself. Counsel's Mot., ECF No. 123. On that same day,
Petitioner filed a pro se letter motion to dismiss due to void
contracts. Pet.'s Pro Se Mot., ECF No. 124.

At the hearing on March 31, 2017, the Court began by
summarizing the previous hearing, the order of forfeiture, and the
two motions filed on March 29th. March Sen. Hr'g Tr. 4-8. After
discussing, on the record, each of the March 29th motions with
Petitioner and his Counsel, the Court deemed both motions
withdrawn. Id. at 8-12. The Court proceeded to hear evidence and
argument from counsel and an allocution from Petitioner. The Court
then denied the Defendant's motion for a downward departure and
said it would consider the downward variance argument in its

3

ultimate sentence. Id. at 58. Ultimately, the Court sentenced Petitioner to 121 months imprisonment, which was in the middle of Petitioner's advisory guideline range. Id. at 65; Judgment, ECF No. 127.

Petitioner timely filed the instant § 2255 motion on April 16, 2018. Pet.'s Mot., ECF No. 140. Therein, Petitioner requests that his sentence be vacated because Petitioner's Counsel provided ineffective assistance by failing to (1) challenge jurisdiction, (2) object to a four-level enhancement applied at sentencing, (3) object to a three-level enhancement applied at sentencing, and (4) prepare for sentencing and prepare Petitioner for sentencing. Id. On June 12, 2018, the Government filed a response in opposition. Gov't's Resp., ECF No. 143. Petitioner did not file a reply. Having been fully briefed, Petitioner's pending motion is ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). To obtain such relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the

4

sentence or conviction is "otherwise subject to collateral attack." Id. A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue" may inform the resolution of the motion. Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. United States v. Hadden, 475 F.3d 652, 661-63 (4th Cir. 2007). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999).

Although a petitioner advancing new claims asserted for the first time in a § 2255 motion must generally "clear a significantly higher hurdle than would exist on direct appeal," United States v. Frady, 456 U.S. 152, 166 (1981), a freestanding claim of ineffective assistance of counsel is properly asserted for the first time in a § 2255 motion, see United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255

motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010) (citing Massaro v. United States, 538 U.S. 500, 504-06, (2003)).

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (emphasis added) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To obtain relief based on an allegation of ineffective assistance, a petitioner must establish both that: (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "Vague and conclusory allegations contained in a § 2255 petition" are insufficient to carry a petitioner's burden under Strickland, and such allegations may therefore "be disposed of without further investigation by the

6

District Court." United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) (quotation marks and citation omitted).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see Strickland, 466 U.S. at 687. As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. Only in "relatively rare situations" will a § 2255 motion establish that, "'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" Tice v. Johnson, 647 F.3d 87, 102 (4th Cir. 2011) (quoting Strickland, 466

U.S. at 690). Attorneys are permitted to "be selective and strategic without risking an ineffective assistance of counsel claim," as demonstrated by the well-established and consistent Fourth Circuit precedent holding that the law does "not penalize attorneys for failing to bring novel or long-shot contentions." United States v. Mason, 774 F.3d 824, 828, 830 (4th Cir. 2014) (citations omitted).

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693–94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If a petitioner fails to prove either of the two prongs of the Strickland test, the court need not evaluate the other prong. Moore v. Hardee, 723 F.3d 488, 500 (4th Cir. 2013).

### III. DISCUSSION

Petitioner's motion advances four claims of ineffective assistance of counsel. Specifically, Petitioner asserts that his Counsel (1) failed to challenge jurisdiction, (2) failed to object to a four-level enhancement applied at sentencing, (3) failed to object to a three-level enhancement applied at sentencing, and (4) failed to adequately prepare for sentencing and to prepare

8

Petitioner for sentencing. Pet.'s Mot, ECF No. 140. The Court will address each claim in turn.

## A. Failure to Challenge Jurisdiction

Petitioner first argues that Counsel provided ineffective assistance by failing to file "a pretrial motion challenging federal jurisdiction over the acts alleged in the indictment." Id. at 5. Petitioner claims that "[a] successful challenge would have caused this Court to dismiss the indictment." Id. Beyond the above statements, Petitioner does not explain why he believes Counsel had grounds to challenge the Court's jurisdiction. The Government responds by arguing that the Court had jurisdiction because the offense to which Petitioner pled guilty was a Hobbs Act robbery, over which the Court clearly has jurisdiction, and therefore, it would have been frivolous for Petitioner's Counsel to file the motion. Gov't's Resp. 10-11.

Petitioner was charged with and pled guilty to Conspiracy to Interfere with Commerce by Means of Robbery in violation of 18 U.S.C. § 1951(a), which is a "Hobbs Act" violation. "The Hobbs Act prohibits robbery or extortion that 'in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce.'" United States v. Tillery, 702 F.3d 170, 174 (4th Cir. 2012) (emphasis added) (quoting 18 U.S.C. § 1951(a)). Thus, "[a] Hobbs Act violation requires proof of two elements: (1) the underlying robbery or extortion crime, and (2)

an effect on interstate commerce." Williams, 342 F.3d at 353. "'[T]he government need not prove a substantial effect [on interstate commerce] in each individual case.'" United States v. Taylor, 754 F.3d 217, 222-23 (4th Cir. 2014) (quoting United States v. Powell, 693 F.3d 398, 402 (3d Cir. 2012)). Rather, "the impact on commerce [may be] small, and it may be shown by proof of probabilities without evidence that any particular commercial movements were affected." United States v. Brantley, 777 F.2d 159, 162 (4th Cir. 1985). "Moreover, the government is not required to prove that the 'defendant intended to affect commerce or that the effect on commerce was certain; it is enough that such an effect was the natural, probable consequence of the defendant's actions.'" Taylor, 754 F.3d at 222 (quoting Williams, 342 F.3d at 354). "To determine whether a robbery affects commerce, we do not simply examine the effect of the individual action in question; it is sufficient that the 'relevant class of acts' has a measureable [sic] impact on interstate commerce." Id. (quoting Tillery, 702 F.3d at 174). "Commerce is sufficiently affected under the Hobbs Act where a robbery depletes the assets of a business that is engaged in interstate commerce." Williams, 342 F.3d at 354-55.

Federal courts have jurisdiction over Hobbs Act robberies because an element of such robbery is that it affected interstate commerce. United States v. Curry, 744 F. App'x 784, 787 (4th Cir. 2018). As stated, under the Hobbs Act, the effect on interstate

commerce need not be substantial, rather, the "jurisdictional predicate is satisfied where the instant offense has a minimal effect on interstate commerce." Tillery, 702 F.3d at 174 (emphasis added).

Petitioner has failed to show that his Counsel's decision not to object to the Court's jurisdiction constituted ineffective assistance of counsel because he has not demonstrated that such action fell below an objective standard of reasonableness or that he suffered prejudice. First, Counsel's actions meet the objective reasonableness standard because a reasonable attorney would not have filed an apparently frivolous motion challenging jurisdiction. The Court clearly had jurisdiction over the offenses charged in Petitioner's case because they were Hobbs Act violations under 18 U.S.C. § 1951. As just stated, the Court has jurisdiction over Hobbs Act violations because an element of such offenses is an effect on interstate commerce. A reasonable attorney could have determined, based on the facts alleging Petitioner participated in robberies affecting interstate commerce, that challenging the Court's jurisdiction by way of a pretrial motion would have been frivolous since the Indictment clearly alleged the assets of businesses were depleted. The Court should "not penalize attorneys for failing to bring novel or long-shot contentions." Mason, 774 F.3d at 830. A jurisdictional challenge was clearly, at best, a "long-shot" here. Thus, Petitioner has failed to

demonstrate that his Counsel's performance fell below the objective standard of reasonableness.

Second, even if it was unreasonable for Counsel not to file a motion, Petitioner has also failed to demonstrate that Counsel's decision not to challenge the Court's jurisdiction was prejudicial. Even if Counsel had raised a pretrial jurisdictional challenge, the Court would have denied it based on the fact that Plaintiff was charged with Hobbs Act robberies, crimes over which the Court clearly had jurisdiction based on the allegations in the Indictment. Moreover, as the Government notes, Petitioner was charged with conspiring to rob multiple AT&T stores, which would have easily been shown to be a part of "a global technology business regularly engaged in interstate commerce." Gov't's Resp. 10. Additionally, the statement of facts from Petitioner's guilty plea, to which Petitioner agreed, expressly states that "[t]he robbery of the [AT&T stores] affects commerce as defined in 18 U.S.C. § 1951(b)(3) as each location robbed was a commercial establishment selling goods that had traveled in interstate commerce." Statement of Facts 3, ECF No. 65 (emphasis added). Thus, the robberies Petitioner was alleged to have conspired to commit, and ultimately was convicted of conspiring to commit, involved "deplete[ing] the assets of a business that is engaged in interstate commerce." Williams, 342 F.3d at 354-55. Such impact

12

on interstate commerce gives this Court jurisdiction over such offenses.

Further, the Court is entitled to consider Petitioner's argument, which states there was prejudice due to the fact that a jurisdictional challenge would have succeeded, "patently frivolous or false" because it directly contradicts Petitioner's sworn statements that essentially agreed that the jurisdictional element had been satisfied. See United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005) (indicating that, absent "extraordinary circumstances," allegations in a § 2255 motion that directly contradict the petitioner's prior sworn statements are considered "patently frivolous or false"). First, Petitioner pled guilty to Count One of the Indictment, which indicates that he agreed that the elements of a Hobbs Act violation, which include the jurisdictional element of an effect on interstate commerce, were satisfied. Second, as noted, the Statement of Facts, which Plaintiff agreed to at his guilty plea hearing, states that the robberies affected interstate commerce as defined in the Hobbs Act because the stores sold goods that traveled in interstate commerce. Statement of Facts 3. Third, Petitioner also stated, under oath and on the record at his sentencing hearing, that there was no reason why the Court should not accept the plea agreement and find Petitioner guilty of the Hobbs Act violation in Count One, which, again, indicates his agreement that all of the elements were

13

satisfied.[1]   March Sen. Hr'g Tr. 18.   Fourth, later in the sentencing hearing, Petitioner confirmed, under oath and on the record, that everything in the PSR was correct, which included the sentence from the statement of facts that the goods from the stores targeted by the robberies had traveled in interstate commerce.[2] Id. at 22-23.   Because Petitioner stated that he agreed to the plea agreement and statement of facts, stated that there was no reason not to find him guilty of the Hobbs Act violation, and stated that the PSR was correct, Petitioner has essentially agreed, as stated under oath and on the record, that the jurisdictional element requiring an effect on interstate commerce had been satisfied.   Thus, the Court is entitled to consider Petitioner's

---

[1] Petitioner initially hesitated when the Court asked if there was any reason why the Court should not make a finding of guilt at the sentencing hearing. March Sen. Hr'g Tr. 15.  Petitioner and his Counsel expressed to the Court that Petitioner hesitated because of a misunderstanding of why he was held responsible for one of the robberies committed as a part of the conspiracy, even though he was not involved in the planning or execution of that particular robbery.   Id. at 15-18.  Petitioner did not express any hesitation about the Court's jurisdiction or any concern over his prior agreement that the robberies affected interstate commerce.  After the Court explained the conspiracy concept and confirmed Petitioner's understanding on the record, Petitioner agreed that there was no reason not to accept the plea agreement and make a finding of guilt.   Id. at 18.

[2] To address Petitioner's concern regarding the lack of clarity about his involvement in one of the robberies, the Court corrected a paragraph in the PSR to note that Petitioner did not participate in one of the robberies.   March Sen. Hr'g Tr. 21.  After making that correction, the Court asked Petitioner if there were any errors in the report now that the sentence about the robbery had been added.   Id. at 22.  Again, Petitioner hesitated and responded that there were "some things not mentioned."   Id.   The Court permitted Petitioner and his Counsel to confer and asked numerous clarifying questions about Petitioner's concerns with the report.   Id. at 22-24.  Notably, the Court asked Petitioner the following question: "So what's actually in [the PSR], though, even though you think there may be more information that you would have liked to have had in here, what's in here is not inaccurate or wrong?"   Petitioner responded: "It's correct, sir."

argument, that a jurisdictional challenge would have succeeded, "patently frivolous or false" because it directly contradicts Petitioner's sworn statements that essentially agreed that the Court had jurisdiction over the case. See Lemaster, 403 F.3d at 222. Petitioner has not indicated any "extraordinary circumstances" that would cause the Court to doubt these sworn statements. See id. Therefore, because Petitioner cannot show that a motion challenging jurisdiction could have succeeded, Petitioner has failed to demonstrate the prejudice prong of the Strickland standard.

Accordingly, Petitioner's claim of ineffective assistance of counsel for failure to file a pretrial motion challenging the Court's jurisdiction is **DENIED**.

### B. Failure to Challenge Four-Level Enhancement

In his second claim, Petitioner asserts that Counsel was ineffective for "failing to challenge the four-level enhancement applied under USSG 2B3.1(b)(7)(C) for abduction."[3] Pet.'s Mot. 6. Petitioner argues that, while his conduct supported a lower enhancement for restraint of the victims, his conduct did not rise

---

[3] Although Petitioner cites to section 2B3.1(b)(7)(C), the proper citation for the section that Petitioner is likely referring to is section 2B3.1(b)(4)(A). See U.S.S.G. § 2B3.1(b)(4)(A) (2016); PSR ¶ 36. Section 2B3.1(b)(7)(C) is the basis for the two-level enhancement that Petitioner received for a loss over $95,000. U.S.S.G. § 2B3.1(b)(7)(C); PSR ¶ 37. The explanation in Petitioner's motion clearly indicates that he intended to refer to the four-level abduction enhancement applied under section 2B3.1(b)(4)(A). Accordingly, the Court only analyzes the abduction enhancement.

to the level of abduction of the victims. Id. Petitioner states that "[a] successful challenge would have reduced the guideline range by 2 levels." Id. The Government responds that counsel's decision not to object does not rise to the level of ineffective assistance because she initially objected to the enhancement, but upon further research, realized she had no legal basis to do so. Gov't's Resp. 11. The Government further argues there is no prejudice here either because the objection would have been overruled as the enhancement clearly applies. Id. at 11-12.

The PSR indicates that Petitioner received a four-level enhancement for an abduction to facilitate the commission of a robbery because, during one of the robberies he was involved in, "[e]mployees were made to move from the front of the respective store to the back prior to being zip tied." PSR ¶ 36. According to the guidelines, the enhancement for abduction applies if the "victim was forced to accompany an offender to a different location." U.S.S.G. § 1B1.1 App n.1(A); see U.S.S.G. § 2B3.1(b)(4)(A). Whether the enhancement applies must be determined on a case-by-case basis. United States v. Osborne, 514 F.3d 377, 390 (4th Cir. 2008). The Fourth Circuit has found that a "different location" can be different areas within the same building or store. Id. at 389-90 (finding that the abduction enhancement applied where a robber moved victims from the pharmacy area of the store to the front door area of the store to facilitate

16

his escape); United States v. Coates, 113 F. App'x 520, 522 (4th Cir. 2004) (holding that a victim was "abducted" under the guidelines definition when she was moved from one department in a Target store to another department) vacated and remanded on different grounds 544 U.S. 916 (2005). Additionally, "'even a temporary abduction' – i.e., one with minimal movement of the victim or that lasts only a short duration – 'can constitute an abduction for purposes of the sentencing guidelines.'" Osborne, 514 F.3d at 388 (quoting United States v. Nale, 101 F.3d 1000, 1003 (4th Cir. 1996)).

First, Petitioner has failed to show that his Counsel's performance was constitutionally deficient for failing to object. The fact that Petitioner's Counsel did not object, alone, is not enough to show that his Counsel's performance fell below an objective standard of reasonableness. Even if Petitioner were able to show that Counsel's decision was erroneous, which he has not done, Petitioner must show that Counsel's decision not to object was so erroneous that she acted unreasonably by failing to object. See Springer, 586 F.2d at 332 ("[E]ffective representation is not synonymous with errorless representation."). Though there are few details about the movement of the victims in the PSR, the Government showed a video at sentencing that depicted the incident in question. See March Sen. Hr'g Tr. 27-28. The video of the robbery in question, as described by the witness on the stand while

the video was played at the hearing, showed "Mr. Holmes in camouflage . . . herding three employees into the back" by "walking the employees into the back room where the phones and break area and offices are." Id. at 28. Based on this information and the Court's recollection of the video, it appears that Counsel made a reasonable decision not to challenge the enhancement as there were sufficient facts from which she could conclude that the enhancement would apply because the victims were moved from the front of the store to a separate room in the back, which may be considered a "different location" under the standard from Osborne. See Osborne, 514 F.3d at 390. In light of all these circumstances, Counsel's conduct easily "falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689-90.

Moreover, Petitioner has not shown that Counsel's failure to object was the result of a misunderstanding about the relevant legal standard or a failure to conduct basic legal research. Cf. United States v. Carthorne, 878 F.3d 458, 469 (4th Cir. 2017) ("[C]ounsel's failure here to demonstrate a grasp of the relevant legal standards, to conduct basic legal research relating to those standards, and to object to the sentencing enhancement (even though there was a strong basis for such an objection), taken collectively, constituted deficient performance.") (emphasis added). Counsel's sworn affidavit submitted with the Government's brief indicates that Counsel took adequate steps to ensure that

the enhancement was properly applied before deciding not to object. Aff. 1, ECF No. 143-1. In fact, Counsel asserts that she objected to the enhancement at first, but, after further research and a discussion with the probation officer and Assistant United States Attorney, determined that it would be frivolous to file an objection to the enhancement because the enhancement was properly applied. Aff. 1. The Court cannot fault Counsel for "failing to bring novel or long-shot contentions" like this objection would have been. Mason, 774 F.3d at 830. Counsel's conduct clearly "falls within the wide range of reasonable professional assistance" because it indicates Counsel made a strategic decision not to object only after she conducted thorough research. Strickland, 466 U.S. at 689. Thus, Petitioner has failed to establish that Counsel's performance was deficient under the first Strickland prong.

Second, with regard to the prejudice prong, the Court's recollection of the video and the description of the video in the transcript are sufficient for this Court to decide that Petitioner did not suffer prejudice because, even if Counsel had objected, her objection would have been overruled because the enhancement was properly applied. The video clearly showed Petitioner "herding three employees into. . . . the back room where the phones and break area and offices are." March Sen. Hr'g Tr. 28. These facts are almost identical to those of Obsborne, where the Fourth Circuit

19

found there was an abduction because the Defendant moved the victims from the pharmacy area of a store to the front area of the store. Osborne, 514 F.3d at 390. The pharmacy area of the store in Osborne was considered a separate room, and thus a "different location," because it was divided from the rest of the store by a counter and a secured door. Id. Similarly, here, the back room to which Petitioner moved the employees is a separate room divided from the rest of the store. See March Sen. Hr'g Tr. 28. The back room of the AT&T store and the front of the AT&T store "can be deemed discrete 'locations,' each being like 'one among several rooms in the same structure.'" Id. at 390 (quoting United States v. Hawkins, 87 F.3d 722, 728 (5th Cir. 1996)). Thus, even though the back room is in the same store, the Court finds that it is a "different location" such that the enhancement was properly applied. Therefore, Petitioner has failed to show that he suffered any prejudice by Counsel's decision not to object.

Accordingly, Petitioner's claim for ineffective assistance of counsel for failing to object to the four-level abduction enhancement is **DENIED**.

### C. Failure to Challenge Three-Level Enhancement

Petitioner's third ineffective assistance claim argues that his Counsel was ineffective for failing to object to the three-level sentencing enhancement for multiple counts applied under section 3D1.4 of the United States Sentencing Guidelines. Pet.'s

20

Mot. 7. Petitioner claims that the enhancement was improperly applied because he only pled guilty to one count of the Indictment. The Government argues that Counsel was not ineffective for failing to object because the enhancement clearly applies in cases where there are multiple robberies. Gov't's Resp. 12.

Petitioner is correct that he only pled guilty to one count of the Indictment. Plea Agreement 1. That count was for conspiracy to commit three completed robberies and one attempted robbery. Id. When calculating the offense level, the probation officer separated the conspiracy into independent conspiracy counts for each of the completed robberies (Count 1, Count 1a, and Count 1b). PSR ¶¶ 19-49. Then, she calculated the offense level for each conspiracy count and, pursuant to section 3D1.4, determined the combined offense level by taking the highest offense level of the three and increasing it based on the number of "units" calculated for each of the three counts. PSR ¶¶ 41-44. The probation officer determined that the three counts added up to two and a half units, which resulted in the three-level enhancement that Petitioner now challenges. PSR ¶¶ 42, 44.

First, Petitioner has failed to show that Counsel's decision not to object to this three-level enhancement for multiple counts was unreasonable. Counsel's affidavit indicates that she took adequate steps to ensure that the enhancement was properly applied based on her training on the guidelines and her discussions with

the federal public defender's office, who agreed that Petitioner's guidelines were properly calculated. Aff. 1. Moreover, it was reasonable for Counsel not to object because the guidelines clearly state that "a conviction on a count charging a conspiracy to commit more than one offense <u>shall</u> be treated as if the defendant had been convicted on a <u>separate count of conspiracy for each offense</u> that the defendant conspired to commit." U.S.S.G. § 1B1.2(d) (emphasis added). Because conspiracy charges are separated into multiple counts, a reasonable attorney reading and interpreting the guidelines would not have objected to the multiple count adjustment because it appears to be properly applied—even though Petitioner only pled guilty to one count of conspiracy. Thus, Petitioner has failed to demonstrate that Counsel's performance was deficient.

Second, even if Counsel's failure to object was deficient performance, Petitioner has not shown prejudice because, even if Counsel had objected, the objection would be overruled as the enhancement was properly applied. As just noted, the guidelines clearly state that, when a defendant is charged with one count of conspiracy to commit multiple offense, the offenses which defendant conspired to commit should be treated as separate conspiracy counts. U.S.S.G. § 1B1.2(d). The Application Notes to section 1B1.2(d) provide an example that describes Petitioner's exact situation:

> [W]here a conviction on a single count of conspiracy
> establishes that the defendant conspired to commit three
> robberies, the guidelines are to be applied as if the
> defendant had been convicted on one count of conspiracy
> to commit the first robbery, one count of conspiracy to
> commit the second robbery, and one count of conspiracy
> to commit the third robbery.

U.S.S.G. § 1B1.2 App. n.3. Thus, while Petitioner is correct that
he only pled guilty to <u>one</u> count of the Indictment, under the
guidelines, the guideline for that <u>one</u> count is calculated as if
it were <u>three</u> counts because it is a conspiracy to commit three
separate robbery offenses. <u>Id.</u>

In some cases, multiple counts can be grouped for calculation
purposes. U.S.S.G. § 3D1.2. However, section 3D1.2(d) of the
guidelines states that offenses under section 2B3.1 (which include
Petitioner's robbery conspiracy) are <u>excluded</u> from grouping.
U.S.S.G. §§ 2B3.1, 3D1.2; <u>United States v. Bellamy</u>, 26 F. App'x
250, 261-62 (4th Cir. 2002) (treating a conspiracy conviction as
nine separate conspiracy convictions where there were "nine overt
acts of robbery"). Therefore, for guideline calculation purposes,
Petitioner's one conspiracy count was properly divided into
separate conspiracy counts that are considered separate "groups."

Pursuant to section 3D1.4, when there are multiple groups, a
combined offense level must be calculated. U.S.S.G. § 3D1.4. To
calculate the combined offense level, section 3D1.4 instructs
that, first, the group with the highest offense level is chosen.
<u>Id.</u> Second, the offense level should be increased based on the

number of "units" attributed to each group. Id.  The number of units is determined by looking at the offense level for each group. Id.  The group with the highest offense level, and any group between one and four levels less than the highest level, each count as one unit.  Id.  Anything between five and eight levels less than the highest level counts as one-half unit, and anything nine or more levels less than the highest level does not count as a unit.  Id.

In Petitioner's case, the counts and units were properly attributed as follows:

| Count | Offense Level | Units |
|-------|---------------|-------|
| 1     | 27            | 1.0   |
| 1a    | 23            | 0.5   |
| 1b    | 29            | 1.0   |

PSR ¶ 42; see U.S.S.G. § 3D1.4.  Because there is a total of two and a half units, the offense level was properly increased by three levels.  PSR ¶¶ 43-44; see U.S.S.G. § 3D1.4.  Thus, the three-level multiple count enhancement was properly calculated and applied even though Petitioner only pled guilty to one count of the Indictment. Because the enhancement was properly applied, the Court would have overruled an objection if Counsel had made one. Moreover, Petitioner has failed to provide this Court with any law or facts that suggest the enhancement should not have been applied

as explained above. Thus, Petitioner has also failed to demonstrate the prejudice prong of the Strickland standard.

Accordingly, Petitioner's claim of ineffective assistance of counsel for failure to object to the three-level sentencing enhancement is **DENIED**.

### D. Failure to Prepare for Sentencing

Petitioner's fourth and final claim argues that Counsel was ineffective because she failed to prepare herself and to prepare Petitioner for sentencing. Pet.'s Mot. 9. More specifically, Petitioner argues that Counsel failed to (1) be fully prepared for sentencing, (2) do anything to mitigate his sentence, (3) properly advise him of his right to allocution, and (4) advise him of his ability to submit character letters or present testimony. Id. The Government responds that Counsel did adequately prepare herself and did prepare Petitioner for sentencing as stated in her sworn affidavit. Gov't's Resp. 12-14.

### 1. Counsel's Failure to Prepare Herself

The circumstances before the Court indicate that Counsel was not deficient for inadequate preparation of herself. Counsel's affidavit indicates that she not only conducted her own research, but she consulted the probation officer, the Assistant United States Attorney, and the Federal Public Defender's Office about Petitioner's guideline calculations. Aff. 1. Further, Counsel's detailed position paper and conduct at both sentencing hearings

25

indicates that she was adequately prepared because she exhibited sufficient knowledge of the case, of Petitioner, and of the relevant law. Counsel even requested (and was granted) a continuance at the first hearing for more time to prepare. March Sen. Hr'g Tr. 4-5 (explaining what happened at the first hearing). Thus, Petitioner fails to demonstrate ineffective assistance of counsel based on Counsel's failure to adequately prepare herself for sentencing because her preparation was well within the bounds of reasonable conduct such that her performance was not deficient.[4] Accordingly, Petitioner's motion based on Counsel's failure to prepare herself for sentencing is **DENIED**.

## 2. Counsel's Failure to Mitigate

With regard to Petitioner's claim that Counsel "did nothing to mitigate [Petitioner's] sentence," Pet.'s Mot. 9, the Court finds that such claim is without merit because the circumstances show that Counsel took multiple steps to ensure a fair hearing and mitigate Petitioner's sentence. First, Counsel filed a thorough position paper requesting a downward departure based on an overstated criminal history and a downward variance based on numerous mitigating factors. Def. Pos. Paper, ECF No. 105. Second, she asked for a continuance at the first sentencing hearing to enable her and Petitioner to review the videos the Government

---

[4] The Court need not address the prejudice prong because Petitioner has failed to prove the deficient performance prong. Moore, 723 F.3d at 500.

wanted to present as evidence and to properly resolve the forfeiture issue. March Sen. Hr'g Tr. 4-5 (discussing the previous hearing and why sentencing was continued). Third, Counsel argued, at the second sentencing hearing, that there were numerous mitigating factors that warranted either the downward departure or the variance that she had requested on behalf of Petitioner. March Sen. Hr'g Tr 40-50. Therefore, Petitioner's claim that Counsel "did nothing" to mitigate his sentence is clearly incorrect. Counsel may not have done as much as Petitioner would have liked, but she clearly attempted to mitigate in multiple ways. Her efforts clearly fall within the "wide range of professionally competent assistance," and, therefore, were not deficient performance.[5] Tice, 647 F.3d at 102. Thus, Petitioner has failed to show that Counsel was ineffective for failing to try to mitigate his sentence. Accordingly, Petitioner's motion based on Counsel's failure to mitigate is **DENIED**.

### 3. Allocution

Petitioner also claims that Counsel, "did not advise [him] properly regarding allocution." Pet.'s Mot. 9. The right to allocution is derived from the Federal Rules of Criminal Procedure, which state: "Before imposing sentence, the court must . . . address the defendant personally in order to permit the defendant

---

[5] The Court need not address the prejudice prong because Petitioner has failed to prove the deficient performance prong. Moore, 723 F.3d at 500.

to speak or present any information to mitigate the sentence."
Fed. R. Crim. P. 32(i)(4)(A)(ii). The Fourth Circuit has held
that

> [w]hen a defendant was unable to address the court before
> being sentenced and the possibility remains that an
> exercise of the right of allocution could have led to a
> sentence less than that received, we are of the firm
> opinion that fairness and integrity of the court
> proceedings would be brought into serious disrepute were
> we to allow the sentence to stand.

United States v. Cole, 27 F.3d 996, 999 (4th Cir. 1994).

Petitioner does not claim that he was denied his right to
allocution by the Court, rather he claims that Counsel was
ineffective because she failed to advise him about allocution.[6]
Even if it were true that Petitioner was not "properly" informed
about allocution and even if Counsel's failure to inform him
amounted to deficient performance under Strickland, the Court
still finds that Petitioner has not shown ineffective assistance
of counsel because he has not demonstrated prejudice.[7] See Moore,
723 F.3d at 500 (explaining that the Court need not address one
Strickland prong if the other has not been satisfied). "Even if

---

[6] Though the Supreme Court has held that the failure of a trial court to comply
with the formal requirements of Rule 32 is not grounds for collateral relief in
a § 2255 motion, such ruling does not preclude ineffective assistance of counsel
claims such as Petitioner's, which are properly brought in a § 2255 motion.
See Hill v. United States, 368 U.S. 424, 426 (1962).

[7] Though Counsel's affidavit contradicts Petitioner's claim that he was not
informed about allocution, an evidentiary hearing is not necessary because,
even if what Petitioner says is true, he is not entitled to relief as he did
not show that Counsel's failure to inform was prejudicial to him. See R. Gov.
§ 2255 Proc. in U.S. Dist. Cts. 8(a).

trial counsel failed to inform Petitioner of his statutory right to allocution," Petitioner must prove that he was prejudiced by such failure. Johnson v. Holloway, No. 3:14-cv-1071, 2016 U.S. Dist. LEXIS 175876, at *27-29 (M.D. Tenn. Dec. 20, 2016); accord Mata v. State, 124 Idaho 588, 591, 861 P.2d 1253, 1256 (Ct. App. 1993) ("The failure of an attorney to advise a client of this right of allocution, however, does not automatically constitute ineffective assistance of counsel. Where the court . . . advises the defendant of the right to address the court prior to sentencing, any failure on the part of counsel also to so advise the defendant may be obviated, and the defendant may suffer no prejudice from counsel's omission."). Petitioner did not suffer prejudice because the Court advised him of his right before he was sentenced, and he was not denied his right to allocution. He spoke after being informed by the Court twice during the sentencing hearing that he would have the opportunity to speak on his own behalf. March Sen. Hr'g Tr. 26 ("I'll give the defendant an opportunity to make any statement he may wish to make prior to the Court imposing sentence."); id. at 51 ("So Mr. Holmes, as I said earlier, you have the opportunity to make a statement. You don't have to, it's up to you, but this is your last opportunity to do that before sentencing takes place. Do you wish to make any statement?").

Moreover, Petitioner does not demonstrate prejudice because he does not indicate that his allocution would have been any different had Counsel advised him of his right before the hearing. Petitioner fails to "identify what he would have said upon allocution, or indicate that he would have offered specific information that might have impacted his sentence." United States v. Peters, No. CR 16-168, 2018 U.S. Dist. LEXIS 138426, at *13 (W.D. Pa. Aug. 16, 2018). Therefore, Petitioner has failed to "affirmatively prove prejudice" because there is no "reasonable probability that the result [of the sentencing] would have been different" had Counsel advised Petitioner of his right to allocution. Strickland, 466 U.S. at 693-94. Accordingly, Petitioner has failed to prove ineffective assistance of counsel for failure to advise about allocution, and his motion based on such ground is **DENIED**.

## 4. Character Letters and Witnesses

Petitioner also argues that Counsel was ineffective because she failed to call Petitioner's mother as a character witness and failed to advise Petitioner that he had the ability to call character witnesses and submit character letters. Pet.'s Mot. 9. A defendant's "history and characteristics" is a factor that the Court should consider in sentencing under 18 U.S.C. § 3553(a). Character letters and witnesses can have an impact on the Court's consideration of that factor. If a petitioner can show that his

30

Counsel was deficient and that he suffered prejudice based on the fact that the Court would have made a different sentencing decision had there been character evidence, then he could conceivably succeed on his ineffective assistance of counsel claim.

Here, Petitioner has failed to demonstrate that Counsel's failure to advise him about character evidence and the failure to call his mother as a witness prejudiced the Court's sentencing decision.[8] Petitioner has not indicated what the content of the letters or testimony would have been and how that would have changed the Court's ruling. See Hausler v. United States, No. 11 C 8485, 2012 U.S. Dist. LEXIS 154418, at *16-17 (N.D. Ill. Oct. 26, 2012) (denying a § 2255 motion where the petitioner failed to indicate how testimony of uncalled witnesses or unsubmitted character letters would have impacted his sentence); United States v. Moore, No. 2:96-CR-0042 (02), 2002 U.S. Dist. LEXIS 569, at *14-15 (N.D. Tex. Jan. 9, 2002) ("Defendant has failed to support the allegations with any independent evidence, witnesses and/or documents, and has completely failed to show any prejudice. . . . [H]e has attached nothing to his motion to show the Court what

---

[8] Although there is a factual dispute over whether Counsel consulted with Petitioner about character witnesses and letters, there is no need for an evidentiary hearing to resolve the dispute because, even if it is true that Counsel failed to advise Petitioner and even if such failure amounts to deficient performance, Petitioner is not entitled to relief because he has not shown prejudice. see R. Gov. § 2255 Proc. in U.S. Dist. Cts. 8(a) (discussing the requirements for an evidentiary hearing); see also Moore, 723 F.3d at 500 (explaining that the Court need not address one Strickland prong if the other has not been satisfied).

[the witness's] potential testimony would have actually been or how it would have helped him in any appreciable degree."). Nothing is attached to Petitioner's motion that indicates the Court's ruling would have been any different based on the character evidence that could have potentially been offered. Petitioner does nothing more than say that his mother could have testified about his good character. As the Supreme Court found in Strickland, an attorney's failure to introduce evidence that did nothing more than indicate the petitioner "was basically a good person" does not amount to prejudice. Strickland, 466 U.S. at 677.

Thus, Petitioner has failed to "affirmatively prove prejudice" because, without more information about the content of the character evidence, Petitioner has not made it reasonably probable that the Court would have ruled differently. Accordingly, Petitioner's claim of ineffective assistance of counsel, based on Counsel's failure to advise Petitioner about character letters and to call Petitioner's mother as a character witness, is **DENIED**.

## IV. CONCLUSION

For the reasons stated above, Petitioner's § 2255 motion is **DENIED**. Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability is **DENIED**. 28 U.S.C. § 2253(c); see Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a); Miller-El v. Cockrell, 537

U.S. 322, 335-38 (2003); Slack v. McDaniel, 529 U.S. 473, 483-85 (2000).

Petitioner is **ADVISED** that because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. Fed. Rule App. Proc. 22(b); Rules Gov. § 2255 Proc. for U.S. Dist. Cts. 11(a). If Petitioner intends to seek a certificate of appealability from the Fourth Circuit, he must do so **within sixty (60) days** from the date of this Opinion and Order. Petitioner may seek such a certificate by filing a written notice of appeal with the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner, Petitioner's former counsel, and the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**

/s/ _____

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May **21**, 2019